THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| BEN E. KEITH COMPANY, § <br> § <br> Plaintiff, § <br> § <br> VS. § <br> § <br> BOSTON MARKET CORPORATION § <br> AND JIGNESH JAY PANDYA, § <br> § <br> Defendants. § | CIVIL ACTION NO. _____ |

## ORIGINAL COMPLAINT

Plaintiff BEN E. KEITH COMPANY ("**Plaintiff**") complains of Defendants BOSTON MARKET CORPORATION ("**Boston Market**") and JIGNESH JAY PANDYA ("**Pandya**"),[1] as follows:

## PARTIES

1. Plaintiff is a Texas corporation organized and doing business under the laws of the State of Texas. Its principal place of business is located in Fort Worth, Texas.

2. Defendant Boston Market is a corporation organized under the laws of the State of Delaware. Its principal place of business outside of Texas appears to be located in the State of Colorado. It was registered to do business in the State of Texas; however, that registration was forfeited. Because it has and is currently conducting business within the State of Texas but is not registered to do business in the State of Texas, Boston Market is deemed to have designated the Secretary of State of the State of Texas to be its registered agent for service of process in civil actions filed in the State of Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.04, *et seq*. Accordingly, Boston Market may be served with civil process in this action by serving the Texas Secretary of

---

[1] Unless otherwise noted, Boston Market and Pandya will be referred to herein collectively as the "**Defendants**").

ORIGINAL COMPLAINT – Page 1

State as its registered agent CT Corporation System, 7700 E. Arapahoe Road, Suite 220, Centennial, CO 80112-1268.

3. Defendant Pandya is a citizen and resident of the State of Pennsylvania. He is known to be the Chairman of the Board of Directors of Boston Market. On information and belief, he owns more than 10% of the outstanding stock of Boston Market. He is, therefore, a responsibly connected person to Boston Market as defined in the regulations promulgated under the PACA. Alternatively, he is a partner, member or shareholder in Boston Market and is involved in its daily business and financial decisions. He may be served with civil process in this action at 8 Woodland Road, Newtown, PA 18940.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this civil action arising under § 2 of the Perishable Agricultural Commodities Act of 1930, as amended ("**PACA**"), 7 U.S.C. 499e(b)(2), pursuant to 28 U.S.C. § 1331. The Court also has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties. The Court has supplemental jurisdiction over Plaintiff's other claims pursuant to 28 U.S.C. § 1367(a). The Court has in rem jurisdiction over the Plaintiff's claims pursuant to, *inter alia*, 28 U.S.C. § 1655.

5. Venue in this District is proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and a substantial part of the property that is the subject of this action is situated in this district.

## FACTUAL ALLEGATIONS

6. Plaintiff and Boston Market entered into multiple contracts under which Plaintiff agreed to sell certain Goods, including perishable agricultural commodities ("**Produce**"), 7 U.S.C. § 499a(4), and 7 C.F.R. § 46.2(t), (u) and (v).

ORIGINAL COMPLAINT – Page 2

7. Boston Market agreed to purchase certain Goods from Plaintiff.

8. Plaintiff agreed to sell the Goods to Boston Market for use in its restaurants.

9. The goods ordered by Boston Market and delivered by Plaintiff to various Boston Markets restaurants (the "**Goods**") located in the State of Texas are identified in invoices (the "**Invoices**") which are summarized in the charts attached hereto and incorporated herein by reference as **Exhibit "1" (summary of all Goods sold), Exhibit "2" (total of all Invoices after adjustments for credits, offsets, overpayment, if any) and Exhibit ""3" (summary of just Produce sold).** These numbers do not include interest which may be due on the amounts owed, as permitted by the parties' agreements and/or applicable law, costs of collection and costs of court. The number of Invoices involved is voluminous. An exemplar of one of the invoices is attached hereto as **Exhibit "4."** *See* Fed. R. Evid. 1006. The original of the Invoices were supplied to Defendant Boston Market and will be made available as needed by the Court and/or parties to the action.

10. The Goods were sold in interstate commerce, as that term is defined in the PACA.

11. The total of all Goods sold to Boston Market by Plaintiff, which is the subject of this action, and which have not been paid for at this time, as listed in the Invoices, is $515,445.10, as reflected in **Exhibit "1"** hereto.

12. The total of the non-Produce items in the Invoices, which were sold to Defendants by Plaintiff, which is the subject of this action, and which have not been paid for at this time, as listed in the Invoices, is $450,653.35, as reflected in **Exhibit "2"** hereto.

13. The total of the Produce items in the Invoices, which were sold to Defendants by Plaintiff, which is the subject of this action, and which have not been paid for at this time, as listed in the Invoices, is $72,814.07, as set forth in **Exhibit "3"** hereto.

14. The Goods were delivered to Defendants by Plaintiff.

15. The Defendants accepted the Goods which corresponds to the Invoice numbers as listed in **Exhibit "1"**.

16. Plaintiff delivered conforming Goods to the Defendants orders placed with Plaintiff.

17. Defendants failed to reject any loads of Produce.

18. Defendants failed to reject any of the Goods and/or were provided credit for any non-conforming Goods.

19. Plaintiff issued to the Defendants, and the Defendants received, each of the Invoices listed in **Exhibit "1".**

20. Plaintiff gave no price adjustments on any load of Produce identified in **Exhibit "1"**.

21. Plaintiff is a grocery wholesaler and supplier of Produce in wholesale quantities. 7 C.F.R. § 46.2(ii).

22. Plaintiff has a license to conduct business under the PACA, No. 19087056.

23. Plaintiff is an unpaid dealer, supplier or seller of Produce having sold Produce to the Defendants for which it remains unpaid. 7 U.S.C. § 499a; 7 C.F.R § 46.2(m).

24. The Defendants failed to pay or otherwise deliver good funds to the Plaintiff in the amount set forth in **Exhibit "1"**, despite repeated demands from the Plaintiff or its representatives.

25. At all relevant times hereto, Boston Market acted by and through Pandya and/or others under his control.

26. At all times relevant hereto, each of the Defendants were engaged, directly or indirectly, in the business of purchasing and/or selling Produce in wholesale or jobbing quantities

and, therefore, are subject to licensing under the PACA and are classified as "dealers" of Produce as defined by the PACA. 7 U.S.C. § 499a(6).

27. All conditions precedent to recovery in this action have been satisfied, met or waived.

## COUNT 1-
## ENFORCEMENT/BREACH OF PACA TRUST
(PACA; 7 U.S.C. § 499e(2)(c))

28. Plaintiff re-alleges paragraphs 6 through 22 as though fully set forth herein.

29. The Defendants are in possession, custody and control of all assets derived from Plaintiff's sale of: (a) Produce; (b) food or products derived from Produce; (c) accounts receivable; (d) proceeds from the sale of Produce; (e) cash; (f) any other assets commingled with proceeds of Produce; and (g) any other assets acquired or maintained with such proceeds, cash, assets, or other trust assets held in Boston Market's name (the "**PACA Trust Assets**") for the benefit of Plaintiff and all other similarly-situated PACA trust beneficiaries.

30. Each of the Invoices contained the following language preserving Plaintiff's beneficial interest in and to Defendants' PACA trust assets:

> The perishable agricultural commodities listed on this invoice as sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 USC 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other produces derived from these commodities, and any receivables or proceeds from the sale of the commodities until full payment is received.

*See* **Exhibit "4"** hereto.

31. Plaintiff is a properly perfected beneficiary of the PACA trust impressed in its favor under the PACA.

32. By language placed on the Invoices, Plaintiff and the Defendants agreed that Plaintiff would be entitled to recover cost of collection, including reasonable attorneys' fees and expenses incurred as part of an action to collect on the Invoices.

33. Defendants failed to object to the Plaintiff's inclusion of the contract language in the Invoices.

34. The contract language in the Invoices is a material part of the parties' agreement.

35. The contract language represents a material part of the Plaintiff's standard credit terms.

36. Plaintiff's inclusion of the contract language above represents a standard industry practice and, as such, is of no surprise to Defendants.

37. Plaintiff's inclusion of the contract language quoted above represents bargained terms and are sums owing in connection with the sales transaction.

38. The Plaintiff is an unpaid supplier or seller of Produce.

39. Defendants failed to pay or otherwise deliver good funds to Plaintiff in the amount set forth in the Invoices for Produce related Goods. despite repeated demands to do so from the Plaintiff.

40. At all relevant times hereto, the Company acted by and through its owners, principals and authorized agents acting on its behalf.

41. The Defendants failed to deliver to Plaintiff sufficient funds from the PACA Trust Assets for any of the shipments of Produce listed in **Exhibit "3"** hereto.

42. The Defendants failed to preserve sufficient amounts of the PACA Trust Assets to fully satisfy all qualified PACA trust claims, such as the Plaintiff's unpaid claims asserted in this action.

43. The matters and actions alleged in this Count constitute a violation by Defendants of Section 2 of the PACA.

44. As a direct result of the Defendants' failure to properly protect the PACA Trust Assets from dissipation, the Plaintiff has suffered damages which are covered under the PACA trust in the current aggregate amount of the Produce items listed in **Exhibit "3"** hereto, $72,814.07, plus further interest and contractually due costs of collection, including attorneys' fees, incurred in this action.

45. On information and belief, additional unknown and unpaid trust beneficiaries exist. As a result, Plaintiff further seeks the entry of an Order directing the Defendants to immediately turn over to the Registry of the Court all assets impressed with the PACA trust for the benefit of all unpaid trust beneficiaries such as the Plaintiff herein, thereby creating a fund for the benefit of said trust beneficiaries.

## COUNT 2-
## VIOLATION OF THE PACA UNFAIR TRADE PRACTICE – FAILURE TO MAKE FULL PAYMENT PROMPTLY
(PACA; 7 U.S.C. § 499b(4))

46. Plaintiff re-alleges paragraphs 6 through 45 as though fully set forth herein.

47. Plaintiff delivered conforming Goods to the Defendants and has otherwise satisfied all conditions of its contracts with Defendants.

48. Defendants received each of the shipments of Produce referenced in **Exhibit "3"** hereto.

49. Plaintiff is a properly perfected beneficiary of the PACA trust impressed in its favor under the PACA.

50.     Defendants failed to pay or otherwise deliver good funds to Plaintiff for each of the invoices identified in **Exhibit "3"** in the amount set forth therein within the applicable payment terms that were in effect between the parties at the time of each transaction.

51.     Defendants' failure to make full payment promptly for all sums due to Plaintiff with respect to Produce related items, as identified in **Exhibit "3"** hereto, constitutes a violation of PACA under 7 U.S.C. § 499b(4).

52.     As a direct and proximate result of Defendants' violation of PACA, Plaintiff incurred damages in the current aggregate amount of the items listed in **Exhibit "3"** hereto, plus further interest, collection costs, and cost of court.

## COUNT 3-
## (Boston Market)
## BREACH OF CONTRACT

53.     Plaintiff re-alleges paragraphs 6 through 52 as though fully set forth herein.

54.     Plaintiff and Boston Market entered into the various contracts identified and represented by the Invoices listed in **Exhibit "1"** hereto.

55.     In each contract, Plaintiff agreed to sell Goods to Boston Market and Boston Market agreed, *inter alia*, to purchase Goods from Plaintiff.

56.     Plaintiff delivered conforming Goods to Boston Market and has otherwise satisfied all conditions of said contracts. The Goods included Produce and non-Produce items.

57.     Boston Market failed to pay or otherwise deliver good funds to Plaintiff for each of the Invoices identified in **Exhibit "1"** in the amount set forth therein within the applicable payment terms that were in effect between the parties at the time of each transaction.

58.     The total of all Goods sold to Boston Market by Plaintiff, which is the subject of this action and listed in the Invoices, is $515,445.10, not including interest and other charges due

thereon.

59. The total of the non-Produce items in the Invoices, which were sold to Defendants by Plaintiff, is $450,653.35, not including interest and other charges due thereon.

60. The total of the Produce items in the Invoices, which were sold to Defendants by Plaintiff, is $72,814.07, not including interest and other charges due thereon.

61. Plaintiff has been damaged in the foregoing amounts as a direct and proximate result of the Boston Market's breach of contract, together with interest and contractually due costs of collection, including attorneys' fees, incurred in this action and costs of court.

## COUNT 4-
### (Boston Market)
### SWORN ACCOUNT

62. Plaintiff re-alleges paragraphs 6 through 61 as though fully set forth herein.

63. The Complaint herein is supported by the sworn testimony of the authorized agent of Plaintiff to the account which is the subject of his action. Attached hereto, as **Exhibit "5",** is the *Sworn Account Affidavit* submitted in support of Plaintiff's claim and allegations herein which is incorporated herein by reference as if fully set forth.

64. Boston Market has failed and/or refused to pay the Invoices for services rendered.

65. Plaintiff has suffered damage as a result of Boston Market's failure to pay the Invoices.

66. Plaintiff should have and recover of and from Boston Market all sums due and owing by them on their respective Invoices, together with any pre-judgment interest due thereon, costs of court, reasonable attorneys' fees and expenses, other allowed collection costs, and post-judgment interest on the total of these amounts, as may be permitted by applicable law.

## COUNT 5 -
### (Pandya)
### BREACH OF FIDUCIARY DUTIES

67. Plaintiff re-alleges paragraphs 6 through 66 as though fully set forth herein.

68. On information and belief, Boston Market was either insolvent or otherwise experiencing severe financial distress at all times relevant hereto.

69. On or before the date of the invoices at issue, particularly those listed in **Exhibit "3"** hereto, Pandya knew or should have known that Boston Market was insolvent or otherwise experiencing severe financial distress.

70. Pandya, as a principal and owner of Boston Market, owes a fiduciary duty to Boston Market's creditors to ensure Boston Market's assets were used to pay the Boston Market's obligations, including those owing under the PACA trust provision at issue in this action.

71. Pandya owed a fiduciary duty to Boston Market's creditors to preserve and maximize the value and availability of Boston Market's assets for them from the point of the Boston Market's insolvency to the current date in amounts sufficient to satisfy Boston Market's PACA trust obligations.

72. On information and belief, Boston Market was or became insolvent on or before the due date of the invoices at issue involving Produce and was insolvent at all times relevant hereto. *See* **Exhibit "3"** hereto.

73. On information and belief, prior to Boston Market's insolvency, Pandya caused Boston Market to transfer Boston Market assets, or otherwise allowed the transfer of Boston Market assets, out of Boston Market for the purpose of paying other creditors of Boston Market ahead of Plaintiff.

74. On information and belief, prior to Boston Market's insolvency, Pandya transferred

Boston Market assets, or otherwise utilized Boston Market assets to pay certain obligations of Boston Market's non-PACA trust creditors and/or to pay his personal obligations.

75. Pandya breached his fiduciary duties to the Plaintiff and other similarly situated creditors of Boston Market by transferring Boston Market assets, or otherwise allowing the transfer of Boston Market assets, in such a manner as to remove said assets from the reach of Boston Market's creditors.

76. Pandya breached his fiduciary duties to the Plaintiff, and other similarly situated creditors, by operating the insolvent Boston Market for the benefit of Pandya and not for the benefit of Boston Market's creditors.

77. Pandya possessed a duty of loyalty to Plaintiff, and other similarly situated creditors of the Boston Market, to act in good faith and not out of self-interest.

78. On information and belief, Pandya breached his duty of loyalty to the Plaintiff, and other similarly situated creditors of Boston Market, by receiving and accepting benefits and other payments from Boston Market during Boston Market's insolvency and while Plaintiff remain unpaid.

79. Pandya's repeated breach of his fiduciary duties to the Plaintiff, and other similarly situated creditors, is a direct result of Pandya's election to serve his own personal interest ahead of all others.

80. As a direct result of Pandya's breach of his fiduciary duties, the Plaintiff incurred damages in an amount not less than the amount of Plaintiff's PACA trust claims asserted in this action, plus further interest.

81. Pandya is personally liable to the Plaintiff, which liability is joint and several with Boston Market and any third parties having received any Boston Market assets with actual or

constructive notice of the breach of Pandya's fiduciary duties, for the dissipation of Boston Market's assets in the current aggregate amount of the Produce items on **Exhibit "3"** hereto, plus further interest and related charges allowed by the parties' agreements and/or applicable law.

    **WHEREFORE**, based on the foregoing, Plaintiff respectfully seeks the following:

    A)    As to Counts 1, 2 and 4 a Final Judgment in favor of Plaintiff and against Defendants, jointly and severally, for violations of the PACA and the PACA trust provision, in the current amount of $72,814.07;

    B)    As to Count 3, a Final Judgment in favor of Plaintiff and against Boston Market for breach of contract as to the total amount of all Goods sold in the current amount of $515,445.10;

    C)    As to all counts, pre-judgment interest on the foregoing amounts at the highest rate permitted under the parties' agreements or permitted by applicable law;

    D)    As to all counts, reasonable attorneys' fees and expenses as permitted by the parties' agreements and/or applicable law;

    E)    As to all counts, post-judgment interest as permitted by applicable law; and

    F)    For such other and further relief as the Court deems appropriate under the circumstances.

    [INTENTIONALLY BLANK]

Dated: September 26, 2022.

Respectfully submitted,

AKERLY LAW PLLC

By: /s/ Bruce W. Akerly
Bruce W. Akerly
Texas Bar No. 00953200
Robert N. Loughran
Texas Bar No. 24111197

878 S. Denton Tap Rd., Suite 100
Coppell, Texas 75019
469-444-1878 telephone
469-444-1801 fax
bakerly@akerlylaw.com
rloughran@akerlylaw.com

ATTORNEYS FOR PLAINTIFF
BEN E. KEITH COMPANY